First case this afternoon is Board of Education of Peoria School District v. Peoria Federation of Support Staff, etc. For the appellant is Stanley Eisenhammer and Christopher Hoffman. Are you both going to argue? For the appellee is Sharon Purcell and Shane Boyles. Are you both going to argue? Have you told the clerk about time? Then Mr. Eisenhammer you may proceed sir. May it please the court. I am Stanley Eisenhammer. I represent the plaintiff appellant, Board of Education of Peoria School District 150. The primary issue before you today is whether Public Act 96-1257 is unconstitutional for violating the Constitution's prohibition against special legislation. The Act takes peace officers employed by a school district in a police department in existence on the effective date of the Act, takes them out of the jurisdiction of the Illinois Educational and Labor Relations Board and Act, and places them on the jurisdiction of the Illinois Public Relations Board. The effect of that is to grant this group of employees the right to interest arbitration to settle their contract disputes as opposed to the right to strike. The legislation, because it applies to peace officers employing school districts in police departments in existence on the date of the effective Act, it divides the school districts, the 800 school districts in the state into two groups. The first group is those who have police departments and employ peace officers on the date of the Act. And then the others are the ones that do not have peace officers employed on that date. As a practical matter, the first group has one school district in it, and the remaining second group has basically 800 school districts in it. Is the basis of your argument, the viso language dealing with the school districts on the date of the enactment of the police department, that that language were not present? Do you have an argument to be made? We still have an argument. What would it be? It would be that if it applied to all school districts, it would still treat school districts differently than they treat community colleges, school districts, I mean cooperatives, charter schools, other educational employers differently than all these other educational employers. Why isn't the legislature entitled to do that? Well, they can if there's a rational reason. We're going to second guess the rational reason? Well, if they have a rational reason. I haven't heard a rational reason. It's a pretty low threshold for rational reasons given the General Assembly Council. You're right. It is a low threshold. The labor boards have come up with two, going through all their briefs, we're down to two reasons. Because it's hard for me to prove a negative, they need to prove that there is a reason, or at least enunciate a reason. They've come up with two reasons. One is because municipal officers patrol the streets, school district officers, I suppose, patrol the schools. But again, why does that apply to school districts and not community colleges? What's the rational basis for that? Or special ed cooperatives or charter schools. The other reason is because there could be a possible conflict between police officers employed by a municipality and school district officers, if they have apparently the right to strike. I don't quite understand that reason, but it still doesn't explain why you would do that for a school district. And wouldn't the conflict still be there for a community college, which is in the same community, a cooperative of school districts, or a charter school. So even if you read that out of the act, which I don't think you can, but even if you read it out of the act, it still doesn't have a rational reason. Procedurally, where are we in this case? That is, do we have to decide now whether or not this provision violates the Constitution and special legislation, or are you asking instead that we merely declare that the complaint or that the motion to dismiss was too early, and you want to be able to present evidence or further proceedings on that issue? I would take the second, and I think that would be appropriate, because it was only decided on a motion to dismiss. So if you felt that the rational reasons given don't carry weight or need evidence on that issue, yes, then it should be sent back for a hearing on whether or not it's a rational reason. I think, on the other hand, even though this is a motion to dismiss, the judge declared this law constitutional. So I think, in my view, and maybe I'm stretching it a little bit, but based on the reasons they gave, the distinctions, the only distinctions they gave, it's not rational for this division between school districts or other educational employers. And I think you would have the power. Let me pause and ask it this way. Normally, questions of constitutionality are up or down, de novo review. We can decide them on the basis of, as with the trial court, the legal arguments. When you're talking, however, here in special legislation and a claim of there being no rational basis, is this something that, as opposed to the typical argument, might lend itself to the presentation of evidence on what that might be beyond just arguments of counsel? I think it could. Because, for example, one of the arguments they made, again, I think they're wrong on a legal basis, but even on a factual basis, and I would love to have expert testimony on it, is that they're arguing, well, even if there is a distinction, interest arbitration and strike is the same thing. And I can argue, having bargained for 30 years, both municipal and schools, that I can tell you interest arbitration and strikes are not the same remedy. They're not the same resolutions. And if you need evidence on that, certainly it would be hard to find anybody who would say that they were the same. So you don't have to take my word for it. Send it back and we'll have expert witnesses on it. But they're not the same. It's like, yeah, they're both dispute resolution devices, but that's like saying red and green are the same because they're colors. But they're not the same. Interest arbitration takes away the authority of the employer, the public body, the ability to make a final decision on any contract dispute. Because you would maybe have a strike, but under the law, without interest arbitration, the employer has the final say, even with a strike, that they may impose the settlement, impose their settlement if they can't get past a deadline. Additionally, interest arbitration tends to, not tends, does, lock in existing working conditions. It's very hard to change the working conditions for interest arbitration without giving something. The mayor of Chicago, right now, who is possibly having a strike with respect to changing the working day, I can guarantee you if I had him testify, he would say he would not want interest arbitration. Because interest arbitration is a good chance of losing unless he gives a lot more money to get the longer day. With this, he might have to endure a strike, but at the end of the day, he has the right to impose, he would have, the city would have to impose a settlement. Second, it changes the fundamentals of bargaining. When you don't have, whether it's a court or an arbitrator, giving a final decision, you really have, it requires both sides to settle it, and when it works well, it's a problem-solving device of trying to get good labor peace, and it works. It works most of the time. I mean, the number of strikes we've had in Illinois is below 1%, I think, over the 20 years that we've had. With interest arbitration, parties just sort of position themselves to the point where they finally get in the best position for interest arbitration, and then have an arbitrator finally say on the big issues which way they go. I have, in our office, we have people who bargain in school districts, who spend their time bargaining a lot, and then I have people doing missile contracts, police and fire, who do a lot of brief writing for the arbitrators on what's the appropriate way. So these remedies are not equivalent, and to the extent you need, you feel that you need the evidence, I think we'd be able to prove that during the case. Declaring a statute unconstitutional, and particularly upon the idea of special legislation, is not an easy thing to do, and furthermore, it's not something that happens very often. In your brief, you cite the Vernon Hills case. That's 17 years ago from the Illinois Supreme Court. I have a colleague in this court who likes to ask this question. What's your best case, counsel? Is that it? And what, other than Vernon Hills, you don't cite as much authority supporting the idea of the application of special legislation? Because I don't have, at least in the time I've been practicing law, and since I represent school districts and we're bound by laws, I mean, they can't do anything. They're not like a private corporation that can do stuff unless they're restricted. They're required to follow the laws. I've never seen a piece of legislation like this. So I think this type of legislation that divides up school districts the way they do is maybe once in every 17 years. If I understand the appellee's position correctly, with regard to the argument you made just now about how these are not equivalent situations, the right to strike or arbitration, they seem to be saying that as a matter of public policy, the legislature has said, in effect, they are. Are they wrong? Wrong, yes. Because it may be, in fact, that they are, but if the legislature concludes that these are equivalent, notwithstanding your strong arguments, aren't we bound by that legislative judgment? But they have not made the judgment they are equivalent. If they were equivalent, if they were actually equivalent, we wouldn't have strikes. I mean, what's the point of having strikes if you have an equivalent remedy that doesn't cause, just taking schools, doesn't cause disruption to the schools? I think hopefully no rational legislature would then say if arbitration was equivalent, would ever authorize a strike. They're not equivalent. They're not. And while the legislature can do a lot of things, they can't, again, they can't say red is green in the end. They can't say black is white. They may say that, but it doesn't make it so. That's why we're here. And yes, they have to come up with a rational reason for doing that. And yes, it's a high threshold, but it is a test. The legislature doesn't have impunity to pass any law it wants to pass, a special piece of legislation just to do it. And maybe, you know, the argument of 17 years is they've learned their lesson except in this particular case. Because really, I mean, I know the union has argued, well, you should read it out of the law because it's really the same as, but they didn't, when the legislature added these various changes, this is a distinctly different addition to the law, in this particular law, than before. Every other change that the union has pointed out says as of the effective date, as of the effective date, meaning it now applies to everybody going in the future. This didn't just say on the effective date. It says in existence on the effective date. So this wasn't like a mistake by the, I don't think this was even a mistake by the legislature. This was a particular issue that they were trying to drive home. Why did they do it? Well, if you ask me, I guess you are asking me. Yes, I am. They did it because they wanted it applied Peoria only. They were concerned that if they applied it to everybody else, they would probably have an uproar by all the other school districts saying we don't want this. But no one else has the Peoria arrangement, do they? Well, now they won't. Well, now they can, I guess. No one does, but it doesn't mean you can't do it. And there's good arguments for doing it and good arguments for not doing it. You know, these are usually called SROs. Most districts, what are they called? School resources officers, for most districts. They borrow the municipalities. That works in certain cases because they're there for important things. On the other hand, there's an issue of control. Here, one of the reasons for doing it is these are our employees. They don't work for the city. They don't work for the city. They're under our control, although I think in this particular union they don't think so. How long has this Peoria situation been in existence? It's been for 40 years. So there's, but for this language added to the statute, there's going to be this onrush despite 40 years of experience of other school districts trying to do the same thing? Well, actually, they could do it because they wouldn't be covered by this law. If I'm right, if I'm right, I'm sorry, if I'm right that there is a distinction between it, then they can go ahead and do it. And they may do it. I mean, Peoria did it 40 years ago. Having SROs is a relatively new thing. I don't think you would find, even in the city of Chicago 40 years ago, that they had police officers in the schools. So if some school district, Champaign-Urbana, decided to do this today, the statute of the issue wouldn't affect it? Right. Or I'd find ways to not apply it. I mean, it comes through truant officers. This wouldn't have them be truant officers. It may not apply anyway because, you know, again, the law talks about a police department. Well, I suppose it's a matter of just tactics. I'm a little surprised. If there is no other school district in the state that has it. At least as I know. In 40 years it's been in existence for Peoria. If I'm drafting the legislation to accommodate the interests that want to change this, I'm wondering why we'd want to put in this clause that might open up an argument to attack the statute where, frankly, it seems to me, had it not been present, this clause had not been present, there's no argument to be made at all. Why would they do that? Well, I guess they would do it to avoid having this law become, that anybody else would care about this law except for Peoria. Right? I guess. The other is that, you know, I don't understand. Right? If you're right, your arguments are right that no one really ever cares, why did they put it, why would they need it? They could have written this law fairly simply to say, this applies to all police officers employed in school districts. The same way they did with universities. Nobody else is affected. You don't have to worry about it. And it's the easy way to do it. They could have done it, but they didn't. So there must have been, I believe it was the purpose to apply it only to Peoria, which they can do. I mean, I've been beaten over the head by the labor boards about, you know, you could have just one district or one person apply once, but you need a rational reason. And that's where this falls down is that they can't come up with a rational reason to distinguish Peoria from Rockford, from Champaign, from Danville, from Granite City. There isn't a rational reason that they've come up with that would apply. The conflict issue would apply in Danville just as much as it applies in Peoria. We do have a second argument on the jurisdiction. Okay, go ahead. On whether or not the court, assuming for a moment that either you send it back for more adjudication or you uphold the constitutionality as well as the court can decide a jurisdictional issue of whether these peace officers in Peoria actually are such that they would fall within the Public Labor Act. Because we have issues, because this comes from, their origin comes from the Truant Officer Act. And so there's an issue, a legal issue of whether peace officers, or if they are peace officers under the general statute, are their peace officers a special police? For example, the police at airports are special police and they are not, they don't have the same rights as regular peace officers. And then what's a police department? Because there's nothing in the school code that authorizes, it authorizes Truant Officers. There's nothing in the school code that authorizes us to have a police department. If you take this to a logical way, you know, it's basic, what they're saying is we can, schools can have a police department where we can take Truant Officers, use them on police, and enforce the laws anywhere in the state. Or anywhere, not the state, anywhere within the school district. So this would be anywhere in the city of Peoria. We could have our own police department, enforce any crimes we want within Peoria, taken to a logical conclusion about what a peace officer is. So I think what we, I would prefer that you just hope, since the trial court held the law constitutional, I think you have the authority to say, because of that declaration, to reverse it and say it's unconstitutional based on the briefs. Either that or direct the, since it's a motion to dismiss, direct it back to the court to enter a judgment in our favor. Or remand it, you know, reverse the motion to dismiss, remand it to the trial court for more proceedings to get back, you know, to get whatever factual issues that need to be determined. Okay. Thank you, Counsel. We have a chance to address this again in rebuttal. Who's going to be speaking first? Okay, Ms. Purcell. Good afternoon, Your Honors. My name is Sharon Purcell. I'm the Assistant Attorney General representing both the Illinois Labor Relations Board and the Illinois Educational Labor Relations Board in this matter. And the boards are asking that you affirm the circuit court's dismissal of the district's complaint. First, with regards to the issue of constitutionality of special legislation. I'd like to speak up just a bit. I'm sorry. I'm sorry. With regards to the special legislation issue, of course, when determining whether or not a piece of legislation is constitutional, there's always a strong presumption of constitutionality that applies. And it is the party who is challenging that presumption of constitutionality. You agree this only applies to the period? The boards have not made any findings or taken a position whether or not even, there's been no fact-finding as to what this unit consists of and what they do. So is this a factual dispute at this point? It is a factual dispute, as is any representation petition that comes before the board seeking to represent peace officers. So why shouldn't we reverse them back for resolution of the factual dispute before the trial court dismisses the complaint? The boards have exclusive jurisdiction in bargaining unit determinations. The act gives them, both boards, they make their own determinations. Why shouldn't we think that the trial court has jurisdiction? Why shouldn't we reverse the dismissal of the complaint? I'm sorry, could you, I didn't. Assuming we believe that the trial court has jurisdiction to entertain this complaint, why shouldn't we, given you're talking about there being a factual dispute, reverse the trial court's dismissal of the complaint and send this matter back to the trial court to resolve the factual dispute that you just now acknowledged exists? Because in 1984, when both the Educational Labor Relations Act and the Public Labor Relations Act were enacted, and the courts have explained it's a comprehensive system for regulating public labor relations, and it took those matters from the circuit court and placed them with the board. I prefaced my question with the observation, assuming we believe the trial court has jurisdiction to hear this complaint. Okay. Well, to hear the complaint. Why shouldn't we reverse the dismissal and send this case back to resolve the factual dispute that you just acknowledged exists? The factual dispute of whether or not these employees are peace officers? Does this case only apply to Peoria School District? Justice Cook asked you and you said, you don't know. Sounds to me like there's a factual dispute. You said, yes, there is. This is the petition that's up, and I'm wondering how, what the basis for making this determination would be. What would the circuit court, because whether or not employees are peace officers, that's only going to be, that's always determined when a petition is filed and it looks at what the board's test is for that determination. So whether or not, and that's always going to be, that's always the case. Every case is its own. If there are, if there is another. You mean we can't count on the trial court to resolve whether or not the statute applies only to Peoria? I don't believe that the circuit court should have made that determination. Well, Mr. Eisenhammer sounded like a very competent sort of guy. I thought that given a chance, maybe we could present some evidence. Because I'm sure you could back at the trial court too. The other consideration, of course, is even if they are the only district that would fall under this, differences in classification, if that's how you want to describe it, are not necessarily unconstitutional. There has to be. That is a question he had raised, and I'm anxious to hear your thought about it. What are the justifications, the rational basis for distinctions here, assuming for the moment it's just Peoria, to say only Peoria, this legislation, and it's okay because why? Well, first of all, there has to be a special benefit or privilege that's bestowed on some group. That's a requirement for special legislation? If a group is not receiving it, if there's not a discrimination in favor of some group, then it's two questions. The Supreme Court's test is, does this discriminate in favor of some group as opposed to some other group that's similarly situated? And if it does, then even that doesn't necessarily render it unconstitutional. Is there a rational basis or is it completely arbitrary? Well, here, all this does, we've talked about the moving employees who have the right to strike because they were given that right when the acts were enacted back in 1984 over to the interest arbitration as a dispute resolution mechanism. So you've got two different dispute resolution mechanisms dependent on the state's determination that there are certain employees who it is not in the public's best interest to help the safety of the public to allow them to strike. And those are peace officers, firefighters, security. Sometimes there's essential services that may be, depending on the situation. So it's two different dispute resolution procedures. And this court, back in 2007 in the Department of Central Management Services, when it addressed whether or not employees who would have the right to midterm interest arbitration talked about these two dispute resolution procedures and described them as qualitatively similar. Were we right? Were you right? The state's policy is that that's the state's policy. And so the state has decided that this is the best way to protect labor harmony and the health and welfare of the community members. How come it only applies to Peoria? If this only applies to Peoria, then if that's a function of that being a unique situation, the legislature is not prohibited from addressing a unique situation. You can address a unique situation and that doesn't render legislation special legislation and therefore unconstitutional. What would render it unconstitutional? First of all, if it bestowed a special benefit or privilege, which they can't make that showing because all it's doing is substituting one dispute resolution procedure for another, which the state has decided. Because if you take right to strike from a group of employees, to maintain the balance, the economic balance in negotiations between the employer and the employees, there has to be some other resolution. If the employees can't strike but yet the employer still can impose the terms and conditions of its final offer, it changes the balance of negotiating power. And that's section two. And this court talked about that in its 2007 decision in the Department of Central Management Services. That the idea is that if they don't have that right to strike, and it's because the legislature has... Well, the appellant's not trying to take away the right to strike. The appellant's not trying to take away their... Isn't he seeking to preserve it? He doesn't want arbitration, if I understand him correctly. He says go ahead and strike. The question is... We don't want to be forced to go into arbitration. You know, I mean, that gets to red and green are two different colors. But one is not better than the other. So I might prefer green... Okay, if these two things are the same, the right to interest arbitration and the right to strike, why do we even have this statute? Which statute? The statute that the appellant is complaining about that only applies to Peoria. The legislature... If the legislature has made a determination that there's a certain group of employees that are akin to... peace officers, who... Peace officers do not have the right to strike because of public safety concerns. And so if there is such a group out there, and they don't even have to be right. The legislature does not have to be right in its belief that this is a situation that needs to be addressed. But it has to be rational, doesn't it? It has to be rational. And it's hard to find how it is not rational. Well, I just checked again. Maybe I missed it. But the authority that Mr. Eisenhamer cited in his brief was Petitioner Village of Vernon Hills. 17 years ago, the Supreme Court found the law to be unconstitutional. Special legislation regulated only non-home rule municipalities, counties between 500,000 and 700,000, and received fire protection from more than one district. You don't address that in your brief, do you? Vernon Hills? Yes. I believe that I did. In that case... Because I looked. Maybe I missed it. I just looked again. In that case, as I recall, the court decided that... Because whether or not they could attach to some other fire district, there was no connection between that and the population of what the county was. But there was no group benefited. I mean, that's how you began your discussion. There was no group benefited from this. I don't see that as part of the Supreme Court's jurisprudence on whether or not something's special legislation or not. The Supreme Court has stated in Prusias that special legislation bestows a privilege or benefit on a group that it does not bestow on another similarly situated group. And even if it does, then, that's okay as long as there's a rational reason. And here, there's no special benefit. What is the rational reason? I'm not sure I've yet understood your theory. The rational reason is that peace officers are not allowed... There's safety. They have a different dispute resolution based on what is in the interest of... And this was articulated in 1984 in the passage of the statute. What is the basis... How to preserve labor harmony and it's all to preserve the safety and welfare of the general public. So... They shouldn't be permitted to strike? Excuse me? They shouldn't be permitted to strike? The legislature for peace officers made that... Let's assume the Champaign unit district tomorrow decided to go to the... What is it called? SOR? The officers... SRO. SRO. Okay, the SRO system they have in Peoria. Would this statute apply to the SRO officers in Champaign? Well, of course, that's hypothetical. I mean, is this speculating what's going to happen in the future? We're looking at... Council! I try to ask my questions with specificity. The Champaign school district tomorrow adopts the same SRO procedure regarding police officers that Peoria had at the time the statute passed. Would that be covered by this legislation? The boards would have to determine, because they're the ones who interpret this legislation, whether or not... What that language means. Why isn't the answer that the statute says it does not apply to subsequent events? It only applies to SROs that are in existence on the effective date of the statute. But the act is always interpreted in light of its intent and purposes, and when it comes to deciding... So like the Living Constitution, this is the Living Public Relations Act. It kind of means whatever you want it to mean, notwithstanding what it says. The board has tests for these things. Now, that's not to say that it couldn't be reviewed. So Justice Cook was silly enough to think that the statute means what it says. He's just wrong. We have to wait until we see what the board, whichever board is involved, is going to tell us what the statute really means, notwithstanding what its language is. But the boards always interpret the act. I'm sure they do. Well, of course they do. They wouldn't be doing their job if they did not. Your time is up, counsel. Thank you very much. And again, we ask that the court affirm the Circuit Court's decision. Mr. Boyles? Thank you, Your Honor. I guess I'm next. Is this the Queen of Hearts statute that means whatever I want it to mean, notwithstanding whatever it says? So that with regard to what I thought was a fairly simple question, apparently it's got these cosmic overtones, and who can possibly know what it means until such time as a labor board has resolved it? The rules of statutory construction, at least as far as I am aware, say that the court is to interpret the statute according to the legislature's general assembly's purpose. Now, is this a tough thing to interpret, or do we just disregard what it says? It reminds me of back when I was a trial judge. The joke was I turned to my court reporter and said, don't take down what I said. Take down what I meant. But that was supposed to be a joke. I guess it's not a joke here? No, this is not a joke. Okay. Quite frankly, I didn't understand the technical strict construction that the district is basing its entire argument on until a few days ago. I thought they were arguing about the legislature's purpose. But they don't even get to that question unless you read in existence on the effective date of this amendatory act. What was the legislature's purpose? The same as it was when it amended it in the 93rd General Assembly within the same statutory subsection, and the same in the 94th General Assembly. Okay, and what is their purpose? Their overall purpose is that peace officers, no matter who they're employed by, should be treated the same. What exists peculiarly, the anomaly that the statute corrected, is that these peace officers, these police officers, are underneath the ED Board, the Education Labor Relations Board. Ninety-five percent, maybe more, of the peace officers in the state who are unionized are regulated under the Illinois Labor Relations Board. They don't have the right to strike. Okay, so if that's the purpose, Judge Steigman asked the question, if Champaign goes the way Peoria did, are they covered? Yes, I think so. Quite frankly, I think it's a joke or ridiculous to read this the way the defendants say it should be read, that it only applies to those in existence on the effective date of the act. How should it be read? Prospectively. That's how you assume the statutory amendments are intended. They're intended to apply prospectively unless the legislature specifically states that they shall apply retroactively. I don't see, I think it's an absurd construction to look at this statute, Section 0, I think it's 3 of the act, to read it qualitatively differently from the prior two amendments, the first under the 93rd General Assembly and the second under the 94th General Assembly. I have it in the defendant's brief, page 826 of their appendix. I agree that it's poor word choice, but I'm not aware that poor word choice by the General Assembly automatically equates to a finding of special legislation. Well, let's see. This Act 96-1257 says the school district in the employment of peace officers in its own police department in existence on the effective date of this amendatory act is now a public employer. Yes. Okay. Champaign School District adopts the SRO system. And they want to, they heard about how well it was working in Peoria, they want to adopt everything that Peoria did. How does this Act 96-1257 apply to the Champaign School District if they adopted it tomorrow? I don't understand why it wouldn't. I think Champaign would have to come in and file some declaratory and say it doesn't apply to them, just because it wasn't in existence on the effective date of the act, and that that was an intent by the legislature to only have a statute that applied on one day. Well, no, it's not just one day. It's on that date if it's been preexisting. But what was the purpose of this language? What is it? If it's prospective and retrospective, what would the statute, how would the statute be different if it just said under Public Act 96-1257 the school district in the employment of its peace officers in its own police department are now public employers? Period. And left out all the language about in existence on the effective date of this amendatory act. If that language were out, there would be both prospective and retrospective, wouldn't it? No. You presume it's only prospective. I'm not contesting this is retroactive at all. I have stated that. That's a misstatement. It's only prospective on this date forward, which is what they did the prior two times. It would have been much simpler if they just used the same terminology again. What they used this third time was awfully similar to what they used the prior two times. I mean, so if they said the school district in the employment of peace officers in its own police department is now a public employer, that wouldn't have affected Peoria? That's not my argument. It certainly would have. Well, that would be retrospective because they already got them on board. And that would also affect Champaign if they decided to go the SRO route, wouldn't it? So it would be both retrospective with regard to officers already in employment and prospective with regard to school districts who wanted to do the same thing. What I'm trying to say is that when they said, in existence on the effective date of this amendatory act of the 96th General Assembly, they had the same intent as when they said, as of the effective date of this amendatory act of the 94th General Assembly but not before, which is what they said two prior times in the same statute. They just didn't use the same magic words, for lack of a better term. But not before? But not before. How would that have changed things? I don't know that it would have, but there's never been a challenge that I'm aware of to those prior to amendatory acts which are part of the same statutory subsection. I think what the district wants you to do, they want you to do two things. They want you to say cops can strike, which hasn't been the law ever as far as I'm aware of, at least since World War II. They want us to do what? Their whole argument is based upon the idea that police officers can strike, and they cannot. Up until this act they could, though, couldn't they? No, they could not. What about under the argument before this was made? Common law. Police officers cannot strike, and that's why you have interest arbitration under the Public Labor Relations Act, and that's why cops are prohibited from striking under the Public Labor Relations Act. That has always been the law, so that's a false assertion to begin with. And number two, we don't know. It's just an assumption, but we don't know. The council said it would be awfully hard for him to prove a negative, but we don't know that no other school district out there, that this applies to no other school district out there. So that's an actual issue which needs to be resolved? No. I don't know how you could. He said he couldn't prove a negative. Some of the representatives, while this was being discussed, said that Peoria was the only one that this applied to. I think what they said was as far as they knew, and I am comfortable with that statement. As far as anybody knows, sure, it's just Peoria District 150. Well, he seemed to be a sharp fellow like Mr. Eisenhower. If this went back on remand, do you suppose this difficult factual issue could be resolved? The burden, he's trying to shift the burden to us. It's not our burden. It's his burden. Well, that's not my question. I don't know how he could prove it. Could it be resolved back at the trial level whether or not this statute would apply only to Peoria? I was always taught you can't prove a negative. So this is just one of those epistemological issues that will just happen over the ages? It's just an assumption that Peoria is the only school district that this applies to. Okay. Well, thank you, counsel. Your time is up. Mr. Eisenhower, any rebuttal, sir? I think you referred to me as sharp and competent. I wish my mother would say that. And Mr. Boynton. Well, with respect to the ‑‑ I only have the issue of proving this. I don't want to get too far. That's okay. I take that. With respect to can I prove it, yes. It's easy to prove. There's 800 school districts in the state. There's certainly a way that I can produce evidence from those school districts. It will take me a little time and a little work, but you can do it. If that's the factor that's needed in this particular case. I think even if there was five, it still raises the issue of whether there's a rational distinction between five and 800. What about Mr. Boynton's point that notwithstanding the current ‑‑ the situation before the passage of this act, that your officers couldn't strike because it was in violation of government law? That's totally incorrect. The law ‑‑ prior to 1984 when they passed the act, technically strikes for any public employee was illegal. They passed the act, granted the right to strike to certain employees, all educational employees, and that would include peace officers. To the extent we have peace officers, they have the right to strike. Community colleges, peace officers, who have an act that applies to peace officers, campus cops, they can strike. So the community college campus cops can still strike? Can still strike. Has that ever happened? I don't know. Go ahead. The only one, the university, state community colleges can't. University peace officers were taken, were never part of the act. Originally when the act was passed. The Public Labor Relations Act? They're under the Public Relations Act. And I think there's a qualitative difference for universities because they're very much like cities. They have resident, well, they're full time. Our schools are only there nine months. They have people who live on campus. I mean, the University of Illinois has 40,000 students, not counting. You heard the discussion we just had about what the statute means, about the Champaign School District. If the Champaign School District decided to go to the SRO system that Peoria had. They wouldn't be covered by this portion of the act. They would still be under the Illinois Education and Labor Relations Act and they'd be able to strike. Whether you term them peace officers or not peace officers. So you don't construe the statute as Mr. Boyles and Ms. Purcell? No. It's very clear. It says in the existence on the date of the act. Mr. Boyles talks about previous amendments. They did it prospectively or whatever. Yes, those had different wording. That said, as of the effective date of the act, whatever the employees are now covered by the act. So the two amendments that he's talking about are way different than, way is a legal term, is completely different than what we have here. So the clause in question about in existence on the effective date of this If that were not present, how would the statute work? Would it be both prospective and retrospective and cut out the SROs, not just from Peoria, but also from Champaign if we wanted to go that route? I think they would all be covered. They'd all be in the public act. If I were writing that act to cover everybody, I would have said, I think the definition you had given during their argument, that this applies to all, as of the effective date or whatever, it would apply to them all. I think this goes back to your first question, so we come all the way around. Even if that's true, I still think I have an argument that this is special legislation, because it only applied to school districts and not community colleges. I asked Ms. Purcell about that. I want to hear your thoughts. She addressed the special legislation issue of National Basin and all that. What do you have to say about that? One, there is a special benefit, which is the interest arbitration. Two, it's not that clear-cut, as the one case shows it. I have to show some special benefit, and even if there wasn't a special benefit, as she has said, then it would be an equal protection argument. Equal protection applying to governmental districts? I think equal protection applies to government agencies. Due process doesn't apply. If I remember one case that I had in 1974. So you would have an equal protection argument, which I probably should have pled, but I guess I would have done it anyway. So I'm asking you to, again, reverse the statute unconstitutional, or at the very least reverse and remand for further proceedings. Thank you, counsel. Court will be in recess for a few minutes.